UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BAYCARE HEALTH SYSTEM, INC.,

      Plaintiff,

v.                                        Case No: 8:18-cv-2380-T-60JSS

BAYCARE HEALTH MANAGEMENT
CORP. and TRUE IMAGE
TECHNOLOGIES, INC.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment and a Permanent Injunction Against Defendants ("Motion").  (Dkt. 17.)  For the reasons that follow, the undersigned recommends that the Motion be granted in part and denied in part.

## BACKGROUND

On September 26, 2018, Plaintiff, BayCare Health System, Inc., filed this action against Defendants, BayCare Health Management Corp. and True Image Technologies, Inc., alleging trademark infringement under 15 U.S.C. § 1114 (Count I), trademark infringement under 15 U.S.C. § 1125 (Count II), trademark infringement under Florida Statutes chapter 495 (Count III), false association under 15 U.S.C. § 1125(a) (Count IV), false designation of origin under 15 U.S.C. § 1125(a) (Count V), cybersquatting (Count VI), and unfair competition under Florida common law (Count VII).  (Dkt. 1.)  Plaintiff alleges that it "owns and operates various hospitals and healthcare facilities . . . in association with its BAYCARE trademark" (the "BAYCARE Mark"), which is United States Trademark Registration No. 5,207,371 and Florida State Trademark Registration No. T15000001273.  (Dkt. 1 ¶¶ 10–15.)  Plaintiff generally alleges that Defendants

are infringing on the BAYCARE Mark "in association with healthcare and related services" and by promoting those services on the domain name baycare.us.  (Dkt. 1 ¶¶ 16–28.)

After Defendants did not appear, Clerk's defaults were entered against them.  (Dkts. 10–11.)  On April 17, 2019, Plaintiff moved for final default judgment against Defendants.  (Dkt. 17.)  Plaintiff requests judgment in its favor, permanent injunction, transfer or cancellation of the infringing domain, statutory damages, and an award of attorney's fees and costs.  (Dkt. 17.)  On September 11, 2019, the Court held a status conference at which the Court clarified the request for default judgment."  (Dkt. 23.)  Subsequently, on September 20, 2019, the Court noted that it could not "determine the reasonableness of attorney's fees based on the record currently before it" and ordered Plaintiff to file an unredacted copy of its counsel's billing records and to file "an affidavit from an independent expert addressing" the reasonableness of fees.  (Dkts. 24, 25.)  On October 3, 2019, Plaintiff filed the unredacted billing records (Dkt. 26) and on October 18, 2019, filed an affidavit regarding the reasonableness of the fees (Dkt. 29).

## APPLICABLE STANDARDS

When a party fails to plead or otherwise defend a judgment for affirmative relief, the clerk of the court must enter a default against the party against whom the judgment was sought.  Fed. R. Civ. P. 55(a); *see also* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that a defendant must serve an answer within twenty-one days after being served with the summons and complaint).  Because of the "strong policy of determining cases on their merits," however, default judgments are generally disfavored.  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted).

Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Eleventh Circuit has interpreted the standard to obtain a default judgment "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").  When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## ANALYSIS

I.  **Liability**

   A.  **Counts I, II, III, IV, V, and VII**

To prevail on a claim of trademark infringement (Counts I, II, and III), Plaintiff must establish "'(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir.

2010) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1996)).[1]

Here, as to the first element, Plaintiff alleges that it owns the BAYCARE Mark, which Plaintiff registered in the state of Florida in 2015 and federally registered in 2017. (Dkt. 1 ¶¶ 10–13.) Plaintiff alleges that it has used the BAYCARE Mark in connection with its healthcare goods and services since at least 1997. (Dkt. 1 ¶¶ 10–11.) Further, Plaintiff attaches to its Complaint a copy of the register of the BAYCARE Mark with the United States Patent and Trademark Office (Dkt. 1-1) and with the Florida Department of State (Dkt. 1-2). *See FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*, No. 8:09-CV-454-T-23TGW, 2011 WL 1226002, at *4 (M.D. Fla. Feb. 28, 2011) (evaluating a motion for default judgment and concluding that "[t]he plaintiff has established that it possesses valid marks by identifying the registration numbers of each mark and providing copies of the marks from the U.S. Patent and Trademark Office[ ]"); *see also Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1349 (S.D. Fla. 2001) ("A registration on the Principal Register provides *prima facie* evidence of, *inter alia*, the registrant's ownership and exclusive right to use the marks, 15 U.S.C. § 1057(B), as well as proof of the continual use of the marks dating back to the filing date of the applications for registration."). Thus, Plaintiff has established the first element of trademark infringement.

As to the next element, courts consider the following factors when determining the likelihood of confusion:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and

---

[1] Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1) (Count I), "creates a cause of action for the infringement of a registered mark," whereas Section 43(a), 15 U.S.C. § 1125(a) (Coun II), "protects qualifying unregistered trademarks." *Tana*, 611 F.3d at 773 n.5. Thus, the "same set of facts enabling [Plaintiff] to prevail under Section 1114(a)(1) will result in recovery pursuant to Section 1125." *Babbit Elecs., inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994). Additionally, "[t]he analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. June 28, 2004) (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)).

services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*N. Am. Med. Corp.*, 522 F.3d at 1220.  Plaintiff has sufficiently alleged this element.  Specifically, Plaintiff alleges that through continuous use since at least 1997 and extensive marketing, "the BAYCARE Mark has acquired valuable goodwill and fame throughout Florida and the United States."  (Dkt. 1 ¶¶ 11, 15).  Plaintiff alleges that Defendants have infringed on the BAYCARE Mark by using an identical mark.  (Dkt. 1 ¶ 17.)  Defendants use this identical mark, Plaintiff alleges, to market "services that are substantially similar" to Plaintiff's services (Dkt. 1 ¶ 19) on the allegedly infringing domain, baycare.us, which is similar to Plaintiff's domain, baycare.org. (Dkt. 17 at 13–14.)  Plaintiff alleges that Defendants are infringing on the BAYCARE Mark with the willful intent to "trade off of [Plaintiff's] goodwill and reputation."  (Dkt. 1 ¶ 22.)  Lastly, Plaintiff acknowledges that it has not alleged evidence of actual confusion (Dkt. 17 at 14) but the undersigned agrees with Plaintiff that in considering these factors as a whole, the allegations in the Complaint sufficiently plead a likelihood of confusion.

The factors courts consider in evaluating the fifth element of trademark infringement, i.e., whether a defendant's use of the trademark is in a manner likely to confuse consumers, are identical to those considered in a false association claim and a false designation of origin claim, both of which requires Plaintiff to show that Defendants "adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503–04 (11th Cir. 1985) ("The factors relevant to establishing [false designation of origin] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."); *see Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2019 WL 1468515, at *4

(S.D. Fla. Feb. 27, 2019) ("In the Eleventh Circuit, a false endorsement claim under the Lanham Act is treated the same as a trademark infringement or false association claim.").  Thus, because Plaintiff has sufficiently pleaded the fifth element for a claim of trademark infringement, Plaintiff has also sufficiently alleged its claim for false association (Count IV) and false designation of origin (Count V).  *See Babbit Elecs.*, 38 F.3d at 1181 ("The same set of facts enabling [the plaintiff] to prevail under Section 1114(a)(1) [for trademark infringement] will result in recovery pursuant to Section 1125 [for false designation of origin of claim].").

Likewise, because Plaintiff established "a likelihood of confusion as to [its counts] for infringement, this will also be determinative of the Florida state law" claim for unfair competition (Count VII).  *Vivid Entm't, LLC v. J & B PB, LLC*, No. 2:13-CV-524-FTM-29DN, 2015 WL 144352, at *3–4 (M.D. Fla. Jan. 12, 2015) (concluding that the plaintiff's allegations "establish a likelihood of confusion" and, therefore, entering default judgment for the plaintiff's claims for trademark infringement under federal and Florida statutory law, false designation of origin, FDUTPA, and unfair competition under Florida common law); *Babbit Elecs., Inc.*, 38 F.3d at 1181 (explaining that "the analysis is the same for [plaintiff's] unfair competition cause of action" as a claim for trademark infringement and, therefore, the court's "analysis is therefore equally conclusive of these issues").

### B.      Count VI

"In 1999, Congress passed the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), as an amendment to the Lanham Act to prohibit cybersquatting." *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F. Supp. 2d 1262, 1275 (M.D. Fla. 2010). Cybersquating "occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by . . . using the domain name to

divert business from the trademark holder to the domain name holder." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004).  To state a claim under the ACPA, a plaintiff must show that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006).

As discussed above, Plaintiff has sufficiently alleged that it has a valid trademark and that it is distinctive and famous.  (Dkt. 1 ¶¶ 14–15.)  Additionally, Plaintiff has sufficiently alleged that Defendants' domain name, baycare.us, is confusingly similar to the BAYCARE Mark.  *See DaimlerChrysler*, 388 F.3d at 205 ("Courts generally have held that a domain name that incorporates a trademark is confusingly similar to that mark if consumers might think that [the domain name] is used, approved, or permitted by the mark holder.") (alteration in original; quotations omitted); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999) ("When a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship."); *Omega S.A. v. Omega Eng'g, Inc.*, 228 F. Supp. 2d 112, 126 n.36 (D. Conn. Oct. 18, 2002) ("When evaluating whether a domain name is confusingly similar to a trademark, a district court disregards the top-level domain name (e.g. ".com", ".org", ".net" etc.).").

As to the last element, the "ACPA sets out nine non-exclusive factors that a court may consider in determining whether a defendant had a bad faith intent to profit." *Sound Surgical*, 734 F. Supp. 2d at 1276.  The factors include:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

Plaintiff argues that these factors establish bad faith as Defendants have never had trademark rights in the BAYCARE Mark and have never had a bona fide, non-infringing use of the BAYCARE Mark.  (Dkt. 17 at 18.)   Additionally, the Complaint specifically alleges that Defendants use the infringing domain to "to use, trade off of and benefit from [Plaintiff] and its BAYCARE Mark's valuable goodwill" (Dkt. 1 ¶ 26), that Defendants' use of the domain "is willful and intentional and likely intended as an effort to trade off of [Plaintiff's] goodwill and reputation (Dkt. 1 ¶ 27), and that Defendants "have a bad faith intent to profit from the Infringing

BAYCARE Mark and an intent to divert patients from [Plaintiff's] website to the Infringing Website" (Dkt. 1 ¶ 28).  In considering these factors as a whole, the allegations in the Complaint sufficiently plead a bad faith intent to profit.

Accordingly, upon review of the well-pleaded allegations, the undersigned finds that Plaintiff has stated substantive causes of action for trademark infringement (Counts I, II, and III), false association (Count IV), false designation of origin (Count V), cybersquatting (Count VI), and unfair competition (Count VII).

## II.  Remedies

### A.  Permanent Injunction

Plaintiff requests entry of a permanent injunction against Defendants to prevent further infringement of the BAYCARE Mark.  (Dkt. 17 at 19.)  The Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."  15 U.S.C. § 1116(a).  Permanent injunctive relief is warranted when a plaintiff demonstrates the following: "(1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest."  *Kobe*, 2014 WL 6608967, at *6 (granting an injunction as part of a default judgment).

As to the first two elements, "[t]he Eleventh Circuit has noted that trademark infringement by its nature often results in irreparable harm and that there is generally no adequate remedy at law."  *Bioclin BV v. Multygyn USA, LLC*, 72 F. Supp. 3d 1288, 1296 (M.D. Fla. 2014) (citing *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018 (11th Cir. 1989)).  Given Defendants'

liability for infringing Plaintiff's trademark, which Defendants continue to infringe, it seems that, absent an injunction, Defendants will continue to use Plaintiff's mark.  Further, because Defendants have not participated in this case, they have not presented any hardships for the Court's consideration.  Finally, the public interest is served by issuing the injunction considering that patients should not be deceived as to the source of healthcare services.  For these reasons, the Court recommends that Plaintiff's request for the entry of an injunction against Defendants be granted.

### B.        Transfer of Domain Name

Plaintiff also requests a transfer of the infringing domain name.  (Dkt. 17 at 23.)  In an action under the ACPA, "involving the registration, trafficking, or use of a domain name . . . , a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(C); *see also Hunter Residential Servs., LLC v. AAA Randpro Plumbing, Inc.*, No. 8:16-cv-01311-CEH-TGW, 2017 WL 1987247, at *6 (M.D. Fla. Feb. 21, 2017) (finding a transfer to be appropriate "because AAA's mark is so similar to Hunter's own registered trademark"); *Sound Surgical*, 734 F. Supp. at 1278 (ordering a transfer because "retention of the domain names creates a cognizable danger of further violations of the Lanham Act").  Because Plaintiff has established that the infringing domain, baycare.us, is confusingly similar to, and wholly incorporates Plaintiff's registered mark, the BAYCARE Mark, transfer is warranted.  *See Brookfield Commc'ns*, 174 F.3d at 1066 ("When a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship.")  Accordingly, the undersigned recommends the Court order a transfer of the infringing domain name, baycare.us, to Plaintiff.

### C.     Statutory Damages

Next, Plaintiff moves for an award of statutory damages under the ACPA.  (Dkt. 17 at 23–24.)  In ACPA cases, the plaintiff "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just."  15 U.S.C. § 1117(d).  "The Court has wide discretion to determine the amount of statutory damages," *Chanel, Inc v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. Apr. 28, 2016), and may be awarded "if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts."  *PetMed*, 336 F. Supp. 2d at 1217.  The statutory damages rule, "'formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct.'"  *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002) (quoting *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952)).

In this case, a hearing is unnecessary because, in addition to the alleged facts deemed admitted by Defendants' defaults, Plaintiff provided a detailed declaration with "with accompanying documentary evidence" to support its Motion.  *PetMed*, 33 F. Supp. 2d at 1217 n.1 (noting that under 28 U.S.C. § 1746, declarations signed under penalty of perjury "can be treated with like force and effect as sworn declarations and affidavits").  Plaintiff argues that based on "Defendants' intentional, bad faith behavior, which is emphasized by their failure to appear in this matter," an award of $30,000 in statutory damages is reasonable to compensate Plaintiff for damages and to deter wrongful conduct.  (Dkt. 17 at 24.)  The undersigned agrees that based on the facts of this case $30,000 in statutory damages is appropriate.  *See PetMed*, 336 F. Supp. 2d at 1221–22 (awarding $50,000 per domain name in statutory damages, without a hearing, where the

defendants "registered domain names confusingly similar to Plaintiff's registered marks that also sell pet care products with the bad faith intent to profit from Plaintiff's federally-registered marks").

> **D.      Attorney's Fees and Costs**

Plaintiff also moves for an award of attorney's fees and costs.  (Dkt. 17 at 24–25.)  Under the Lanham Act, a successful plaintiff may recover, in addition to damages, "the costs of the action."  15 U.S.C. § 1117(a).  Additionally, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party."  *Id.*  In determining the amount of attorney's fees to be awarded, courts apply the following three-step process: (1) determine whether the party prevailed in the litigation; (2) determine the lodestar amount, which is calculated by multiplying the number of hours reasonably expended in litigating the claim by the reasonable hourly rate; and (3) adjust the lodestar, if necessary, to account for the results obtained by the prevailing party.  *Atlanta J. & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1289 (11th Cir. 2006).

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  Generally, the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is "'the place where the case is filed.'"  *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).

The party applying for fees bears the burden of establishing the reasonableness of the proffered rate, which can be met by setting forth direct evidence of rates charged under similar circumstances or submitting opinion evidence of reasonable rates.  *Norman*, 836 F.2d at 1299.  In addition, the court may use its own expertise and judgment to make an appropriate independent

assessment of the reasonable value of an attorney's services.  *Id.* at 1303–04.  In calculating the hours reasonably expended on litigation, the court should exclude excessive, unnecessary, and redundant hours and any time spent litigating discrete and unsuccessful claims.  *Id.* at 1301–02.

After the lodestar is determined, the court must decide whether an adjustment to the lodestar is necessary based on the results obtained.  *Id.* at 1302.  As such, the court may adjust the lodestar based on whether the results obtained were exceptional, excellent, or of partial or limited success, thereby compensating for all hours reasonably expended for excellent results or reducing the amount for partial or limited success.  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983)).

### 1.    Entitlement

The Court may only award attorney's fees if this is an "exceptional" case.  15 U.S.C. § 1117(a).  An "exceptional case" under the Lanham Act is one that "'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novells*, 884 F.3d 1110, 1118 (11th Cir. 2018).  Based on the admitted allegations, Plaintiff's case, that Defendant adopted a mark identical to Plaintiff's federally registered mark, is substantively strong.  *See Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1314 (N.D. Ga. 2017) ("Defendants' KrossFit mark has a similar appearance as the CROSSFIT® mark and sounds identical to the CROSSFITT® mark."); *CarMax Auto Superstores, Inc. v. StarMax Finance, Inc.*, 192 F. Supp. 3d 1279, 1284–84 (M.D. Fla. 2016) (noting that "both CarMax and StarMax offer competing products and services.  It is no mistake that their name and marks are confusingly similar.").  The undersigned finds this case to be exceptional and warrants an award of attorney's fees under the Lanham Act.

2. **Reasonable Hourly Rates**

Plaintiff requests an hourly rate of $350 per hour for work performed in 2018 and $360 per hour for work in 2019 for attorney Joshua Martin.  (Dkt. 17-1 at 5.)  Mr. Martin has more than twelve and a half years "of experience handling complex commercial litigation actions" with more than seven years of experience handling primarily "intellectual property disputes, including federal court litigation matters as well as trademark proceedings before the TTAB of the USPTO and other Trademark Offices internationally."  (Dkt. 17-1 at 4.)  In support of this rate, Plaintiff submits the affidavit of an independent expert, Matthew Nelles, who states that this rate is reasonable.  (Dkt. 29-1 at 6–7.)  The undersigned finds that the rates requested for Mr. Martin reflect the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  *See Townsend v. Let's of Ocala, LLC*, No. 5:14-CV-611-OC-34PRL, 2015 WL 4591927, at *2 (M.D. Fla. July 28, 2015), *report and recommendation adopted*, No. 5:14-CV-611-OC-34PRL, 2015 WL 5132776 (M.D. Fla. Sept. 1, 2015) (finding that a rate of $350 per hour was reasonable for an attorney with over ten years of experience); *McMillan v. Masrtech Grp., Inc.*, No. 8:13-CV-1520-MSS-35, 2014 WL 4297905, at *7 (M.D. Fla. Aug. 28, 2014) (finding that a rate of $350 per hour was reasonable for an attorney with eighteen years of experience); *Andrike v. Maple Way Cmty., Inc.*, No. 8:11-CV-1939-T-24, 2013 WL 1881135, at *3 (M.D. Fla. May 3, 2013) (finding that a rate of $325 per hour was reasonable for an attorney with twelve years of experience).

Plaintiff requests an hourly rate of $350 per hour for the work of attorney Deborah Serafini.  (Dkt. 17-1 at 5.)  Ms. Serafini has approximately fifteen "years of experience practicing intellectual property law."  (Dkt. 17-1 at 5.)  Mr. Nelles similarly opined that a rate of $350 per hour for Ms. Serafini is reasonable.  (Dkt. 29-1 at 7.)  The undersigned finds the rate requested for Ms. Serafini

to reflect the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.

Plaintiff requests an hourly rate of $240 per hour for the work of attorney Joshua Cooper. (Dkt. 17-1 at 6.)  Mr. Cooper has approximately three "years of experience practicing intellectual property law." (Dkt. 17-1 at 6.)  Mr. Nelles also found this rate to be reasonable.  (Dkt. 29-1 at 8.) The undersigned finds the rate requested for Mr. Cooper to reflect the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  *See Intenze Prods., Inc. v. Dead Man Supplies Corp.*, No. 8:15–cv–1074–T–36AAS, 2017 WL 759036, at *4 (M.D. Fla. Feb. 9, 2017) (finding that a rate of $275 per hour was reasonable for an attorney with approximately four years of experience); *Gray v. Novell, Inc.*, No. 8:06–CV–1950–T–33TGW, 2012 WL 3871872, at *11 (M.D. Fla. Sept. 6, 2012) (reducing the rate of an attorney with five years of legal experience to $285 per hour).

Plaintiff also requests an hourly rate of $175 per hour for the work of paralegal Aaron Wolke. (Dkt. 17-1 at 6.)  Mr. Wolke has over thirteen "years of experience as a paralegal." (Dkt. 17-1 at 6.)  Mr. Nelles noted this rate to be reasonable as well.  (Dkt. 29-1 at 8.)  The undersigned finds the rate requested for Mr. Wolke to be reasonable.  *See Envtl. Mfg. Sols., LLC v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298, 1320–23 (M.D. Fla. Aug. 14, 2017) (finding paralegal rates from $100 per hour up to $295 per hour to "fall within the normal billing rates for paralegals with similar experience"); *BBY Sols., Inc. v. Livingstone*, No. 3:15–cv–1001–J–32JRK, 2016 WL 7668486, at *7 (M.D. Fla. Apr. 20, 2016) (finding a rate of $160 per hour for a paralegal to be reasonable).

### 3.    Hours Reasonably Expended

Plaintiff argues that its attorneys and paralegal reasonably expended a total of 111.1 hours in this action, 26.5 hours for Mr. Martin, 70.3 hours for Ms. Serafini, 12.9 hours for Mr. Cooper,

and 1.4 hours for Mr. Wolke.  (Dkt. 17-1 at 5–6.)  The affidavit of Mr. Nelles discusses these hours in length and finds them generally reasonable.  (Dkt. 29-1.)  In particular, Mr. Nelles finds 16 hours to draft the Complaint, which includes seven federal and state trademark claims, to be reasonable.  (Dkt. 29-1 at 4.)  However, Mr. Nelles notes that while 65.8 hours to obtain default and move for default judgment "is a justifiable amount of time," Mr. Nelles states that "45 hours would likely serve as a customary, reasonable and necessary total amount of hours here to research, draft, and otherwise prepare" the Motion.  (Dkt. 29-1.)  Thus, Mr. Nelles essentially recommends a reduction of 20.8 hours in the time billed by Ms. Serafini, but otherwise finds the rest of the time to be reasonable expended when considered with the courtesy discounts provided.

The undersigned agrees with Mr. Nelles's opinion.  Accordingly, the undersigned recommends the following lodestars. Mr. Martin's lodestar is the reasonable hourly rate of $350 multiplied by the 12 hours reasonably expended in 2018, and the reasonable hourly rate of $360 multiplied by the 14.5 hours reasonably expended in 2019, for a total of $9,420.  Ms. Serafini's lodestar is the reasonable hourly rate of $350 multiplied by the 49.5 hours reasonably expended, minus a total courtesy discount of $7,850, for a total of $9,475.  Mr. Cooper's lodestar is the reasonable hourly rate of $240 multiplied by the 12.9 hours reasonably expended, minus a courtesy discount of $1,000, for a total of $2,096.  Mr. Wolke's lodestar is the reasonable hourly rate of $175 multiplied by the 1.4 hours reasonably expended, for a total of $245.  Thus, the undersigned recommends a total lodestar of $21,236.

### 4.    Adjustments to Lodestar

After determining the lodestar amount, "[t]he court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."  *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359

(11th Cir. 2006).   In determining whether to adjust the lodestar amount, the court should compensate for all hours reasonably expended if the result was excellent, but must reduce the lodestar if the result was partial or limited success.  *Norman*, 836 F.2d at 1302.  When reducing the amount of attorney's fees awarded to account for limited success, the court may attempt to identify specific hours that should be eliminated or may simply reduce the award by some proportion.  *Id.* (citing *Hensley*, 461 U.S. at 436–37).

Upon consideration, no adjustment to the lodestar is recommended as Plaintiff prevailed and received default judgment on its claims.  *See Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985) ("The determination of a reasonable fee pursuant to section 216(b) of the Fair Labor Standards Act is left to the sound discretion of the trial judge and will not be set aside absent a clear abuse of discretion.").   Accordingly, it is recommended that Plaintiffs be awarded reasonable attorney's fees in the amount of $21,236.

### 5.    Costs

Plaintiff also moves for an award of costs under 15 U.S.C. § 1117(a).  (Dkt. 17 at 24–25.) Plaintiff seeks a total of $639.97 in costs, which are evidenced by Mr. Martin's declaration and exhibits.  (Dkt. 17-1.)  Specifically, Plaintiffs seek to recover the filing fee, service of process costs, and shipping and photocopying costs.  (Dkt. 17-1 at 5.)

Unless a statute provides otherwise, courts are limited in taxing costs to those costs enumerated in 28 U.S.C. § 1920.  *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1259 (11th Cir. 2011) ("[A] statute allowing for the recovery of attorney's fees . . . generally applies in federal court so long as it does not conflict with a valid federal statute or rule.").  According to Section 1920, only the following may be taxed as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in

the case; (3) fees related to printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court-appointed experts and fees related to interpretation services.  28 U.S.C. § 1920.

Thus, the costs for filing fees and service of process fees are permitted by 28 U.S.C. § 1920 and may be taxed as costs.  *See* 28 U.S.C. § 1920 (enumerating allowable costs); *see also U.S. EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) (holding that "a district court does not abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in § 1921").  Additionally, copying costs are also taxable "where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4).  Plaintiff requests $9.60 for photocopy charges for service of the Complaint.  (Dkt. 26-1.)  The undersigned finds these copies to be necessarily obtained.  However, Plaintiff also requests $25.37 in shipping costs, which are not taxable under § 1920.  *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1293 (S.D. Fla. 2015) ("Courier and postage fees are also not recoverable under § 1920.  Likewise, shipping costs are not recoverable.") (internal citation omitted).  Therefore, it is recommended that the Court tax only the costs for filing fees, service of process fees, and necessarily obtained copies, for a total of $614.60.

Accordingly, it is **RECOMMENDED** that:

1. Plaintiff's Motion for Default Judgment and a Permanent Injunction Against Defendants (Dkt. 17) be **GRANTED IN PART** and **DENIED IN PART**.

2. The Clerk be directed to enter final default judgment in favor of Plaintiff, BayCare Health System, Inc., and against Defendants, BayCare Health Management Corp. and True Image Technologies, Inc. as to all counts of Plaintiff's Complaint (Dkt. 1), in the

amount of $30,000 in statutory damages pursuant to 15 U.S.C. § 1117(d), $21,236 in attorney's fees, and $614.60 in costs, against Defendants jointly and severally.

3. Pursuant to 15 U.S.C. § 1116, Defendants, and their respective officers, agents, servants, employees and attorneys, and all persons in active concert and participation with Defendants, be **PERMANENTLY RESTRAINED** and **ENJOINED** from:

  a. using the BAYCARE mark, in any form or fashion, whether alone or in combination with other words or elements, or any other formative variations thereof or any mark confusingly similar to Plaintiff's BAYCARE mark, in any marketing, advertising, promotion, selling, offering and/or providing of any of Defendants' goods and services, including without limitation, on buildings, signage, product labels, websites, advertisements, promotional or marketing materials, press releases, third-party publicity services, trade names, blogs, social media sites or applications, online video accounts, letterhead, labels, inventory, speaking engagements, source identifiers, on the internet, as or in domain names, email addresses, meta tags, keywords, search engines, Google AdWords, computer source coding, or invisible data;

  b. falsely representing themselves as being connected to Plaintiff, through sponsorship or association, falsely designating the origin of Plaintiff's BAYCARE trademark or otherwise creating a false association with Plaintiff;

  c. injuring Plaintiff's goodwill and reputation;

  d. doing or engaging in any other act or thing that would likely induce the belief that Defendants' services are in anyway connected with or sponsored, affiliated, licensed or endorsed by Plaintiff or otherwise engaging in acts or conduct that

would cause confusion as to the source, sponsorship or affiliation of Defendants with Plaintiff; and

e.   from registering and/or purchasing any other domain name that contains terms that are confusingly similar to Plaintiff's BAYCARE mark, or any formative variations thereof.

4.   Defendants be **ORDERED** to:

a.   Within five (5) days of the date of this judgment, recall, remove and/or destroy all goods, services, and advertising, promotional and marketing materials bearing the BAYCARE mark, including boxes, packaging, stationary, letterhead, labels, inventory, business forms, business cards, statements, invoices, signage, brochures, pamphlets, webpages, websites, social media sites, and advertisements bearing the BAYCARE mark or any variation thereof in accordance with 15 U.S.C. § 1118, including all such materials on Defendants' website located at the domain baycare.us;

b.   Within five (5) days of the date of this judgment, cease using the corporate name BayCare Health Management Corp., trade name BayCare Health Management, and any other corporate names or trade names containing the BAYCARE Mark, and file name change amendments for any and all business entities Defendants operate or have formed having corporate names or trade names containing the BAYCARE mark, including BayCare Health Management Corp.;

c.   Within five (5) days of the date of this Order, transfer the subject domain name, baycare.us ("Subject Domain Name"), to Plaintiff. To the extent the current Registrars do not facilitate the transfer of the Subject Domain Name to Plaintiff's

control within five (5) days of receipt of this judgment, the Registries shall, within thirty (30) days, change the Registrar of Record for the Subject Domain Name to a Registrar of Plaintiff's choosing, and that Registrar shall transfer that Subject Domain Name to Plaintiff. Upon Plaintiff's request, the top level domain (TLD) Registry for the Subject Domain Name, or their administrators, including backend registry operators or administrators, within thirty (30) days of receipt of this Order, shall place the Subject Domain Name on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registry which links the Subject Domain Name to the IP addresses where the associated websites are hosted; and

d.   in accordance with 15 U.S.C. § 1116(a), to file with this Court and serve upon Plaintiff within thirty (30) days after service of the permanent injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the permanent injunction.

5.   The Court retain jurisdiction to enforce the final judgment and permanent injunction.

**IT IS SO REPORTED** in Tampa, Florida, on January 3, 2020.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record